et al. Arguing not to exceed 15 minutes per side, Mr. Rick Patterson, Rick Hellman. Your Honor, if it may please the court, Rick Patterson here on behalf of the defendants. I'd like to reserve three minutes for rebuttal. This is an appeal of a denial of qualified immunity for two deputies of the Oakland County Sheriff's Department. The district court denied qualified immunity based on its characterization that the plaintiff in this case was compliant and submissive to the deputies at the time of the incident. When the defendants contended, when the facts are viewed from the perspective of the officer on the scene at the time and under the circumstances that existed, that there's no, that the characterization of the district court is incorrect. That the plaintiff was not compliant and he was in no way submissive to the directions of the deputies. Just to try to paint the picture, obviously your honors are aware, the plaintiff's father had died. They had called the police to come over. The EMT arrived. The deputies then arrived. The EMT asked for a DNR order or a bracelet to see the paperwork. They couldn't produce the paperwork. He said, oh, I have it, but I don't have the paperwork. He doesn't want to be resuscitated, but I don't have the paperwork. At that point in time, the EMT told both the plaintiff and the officer that, well, then he needs to hook him up to an AED and see what he can do, if there's anything he needs to do. It was at that point that the plaintiff became upset, and then from that point forward, the situation escalated. He began yelling at the EMT that you're not going to assault my father. You're not going to touch my father. He was yelling at him. He cussed at the EMT to the point where one of the firefighters who was present called dispatch again and said, step up the backup because this situation is getting out of control. But the plaintiff never did anything more than yell and scream and cuss at the officers, right? He refused to follow their commands. They ordered him to leave the room so that he could... The room in his own house where his dead father was, and he was a doctor. Yes, but I don't think that... And again, that's part of what the district court relied on is the fact that he was a doctor. I don't think that the EMTs on the scene or the deputies can accept, unfortunately, what people say at face value and say, I'm a doctor, and then say, okay, you're a doctor, so we'll listen to you. In the Stricker case, the mother was a nurse and she called and said, my son is overdosing on drugs, and the EMTs got there and the officers made some observation of him and said, yes, he doesn't look good. And she said, well, I'm a nurse. I'm a registered nurse. I've looked at him. He's fine. You don't need to do anything. And the court didn't require them to accept that. The key issue in this case is the tasing, right? That's where the argument of excessive force comes in, right? Yes. Okay, so we get to this situation. My understanding, looking at the facts from the plaintiff's perspective, which we need to do in the qualified immunity context, is to say that the plaintiff asserts that he was against the wall, as I recall, tell me if I'm wrong, with his hands up, and at that point, he's tased. Logistically, you are correct. Now, the, you know, part of the issue here and part of the issue I have is that, well, yes, this is, you know, summary judgment and the facts must be viewed in light most favorable to the plaintiff. At the same time, it's an excessive force claim, so the facts must be viewed from the perspective of the officer on the scene at the time. What justifies an officer tasing a person who's against the wall with no weapon and with his hands up? At that point in time, the individual had refused to follow commands. He refused to leave the room. He had escalated the situation by yelling, by being verbally aggressive towards them, and to the point of taunting them, saying, you know, go ahead and tase me. So that's the problem, that he said that the docked homeowner says, go ahead and tase me? No. That authorizes the police to tase him? No, it's a combination of the active resistance of not following commands. But at this point, he was following the commands. No, he wasn't. He didn't leave the room. So that's the problem, that he didn't leave the room? Yes. That's the disregard of commands. Just like in situations, the Eldridge case that the district court relied on, even, said there was an individual in a car and they ordered him out of the car. He didn't follow that command. The court said that simply following the command wasn't enough. You need to have noncompliance with the command, plus a verbal showing of hostility. In this case, we have the failure to follow the command of leave the room in combination with the verbal showing of hostility towards the EMT and the deputy. So what exactly was the verbal hostility here that you think changes this case from Eldridge? In Eldridge, all the responses were polite. And they were muttering. In this case, he's cussing at the individuals. So you're not allowed to cuss at the police or you can get tased? Well, I believe if you fail to follow their commands, I think cussing at them would be a verbal sign of hostility. And that's what the standard is under Eldridge, is a verbal sign of hostility. Is there any case that has said, in fact, that if you cuss at the police and you are noncompliant with the command to leave the room, you can be tased? It hasn't gotten to the refinement of cussing at them. But as I indicated in Eldridge, it was noncompliance in combination with a verbal showing of hostility. And I would also say that... What if they said simply, if he said, I hate the police, would that be enough of a verbal showing of hostility? I... And yelled it. I mean, the citizens are upset when they're being told things by the police. And they naturally yell at the police. The police are supposed to have tough skins. True. But the standard is, and I would also add, in addition to cussing at them, I think that the defiance of go ahead and tase me, it's not simply, you know, it's a show of resistance to the officer. Counsel? Yes. If he would have stood there with his arms up against the wall while your officer had his taser gun trained at him, why couldn't the EMS at that point, since he's not moving, he's right there, why couldn't they go do their job? Well, it's possible that that could have happened, Your Honor. But as the Supreme Court said in Brighton... And then if he attempted to move or interfere, then you might have some justification for shooting him. Well, I would point to the Supreme Court's statement in Brighton v. Stewart, which is set forth in our brief, that basically says that the role of a peace officer includes preventing violence. They're not simply a hockey referee where they have to wait until he jumps on the EMT and then he breaks up the fight. He doesn't have to jump on him. Just movement, I would suspect, would be enough then. But when he's not moving, I don't see what violence they prevented. Well, there was the fear that had been communicated to the officer by the EMT that he needed to hook this up, the AED, and he was afraid he wasn't going to let him. If he got him up against the wall with his hands up, why couldn't the EMS do what they wanted to do? Because he refused to leave the room, and he still... What does that have to do with them doing what they wanted to do? Because he's still in a position to interfere with the EMT. But at this point, he's not interfering. He's got his hands up, and he's up against the wall, and you have a taser trained at him. Again, I would go back to what the Supreme Court has said, that the role of a police officer includes preventing violence and restoring order. They don't have to wait until something actually happens in order to protect people. I agree with that, but there's something that seems to me that's totally unreasonable is they haven't moved away from that wall. Then you could shoot him, it seems to me. Well, I don't think that... I mean, the fact you got him now cornered doesn't mean... Why shoot him at that point, I guess is my question to you. Because he failed to follow the directions of the officer, and he basically had verbally been aggressive towards them. That's the standard for that use of force, and it's been satisfied here. That's under the case law that existed, under the case law that exists. The officers have the right to be there and to secure the environment. I agree 100%. They don't have to get in a wrestling match with this guy. They don't have to do that. I understand that. But at this juncture, I'm a little... I need more explanation for you than to say that there may have been something potentially that could have happened. Well, there was clearly the perceived threat by the EMT that was communicated to the officer. The threat wasn't physical, was it? Yes. I mean, the perceived threat was that he was going to interfere with him trying to do his job and connect the AED to his father. That was the perceived threat that was communicated to the officer. That was the threat that the officer was aware of, that he was trying to prevent by securing the area, as he's allowed to do under the community care taking role. My question is, when he's got him up against the wall with his hands up and he's got a taser, hasn't he secured the area? I disagree, and I guess that would be... I'm using your terms now. That seems to me where you've got to address it. Well, but I guess at that point, under the case laws that existed, no officer would realize that in that circumstance, simply training a taser on him and waiting for him to do something was required after he had refused to follow commands and was verbally hostile towards the officers. I mean, that may be a gray area that's involved here as far as whether or not he has to wait until he does something, but clearly under the case law that existed, there was sufficient actions and conduct that would justify the use of the force. So another way of thinking about it is, suppose somebody were yelling and screaming at the police and saying, you know, I don't want you to touch my father, and then backed up against the wall and hypothetically completely stopped yelling. Would the past actions be enough to allow that person to be tasered by the police? Because he had been noncompliant for a while and he had yelled bad things at the police, but they were things like cuss words, and I'm going to report you to the authorities. I would say that it would depend on whether or not, from the perspective of the officer on the scene, whether or not the situation had been diffused. If the tension and the hostility and the circumstances of it were still at a frenzied pace or a frenzied atmosphere, then it wouldn't, but if the situation by that individual's actions and compliance or, you know, standing mute and not responding or being hostile towards the officers, if it had been diffused at that point in time from the perspective of an officer on the scene, then, yes, that would change the circumstance, but that's not what we have here. Thank you. Good morning. If it pleases the Court, Craig Weber on behalf of the plaintiff, Dr. Michael Kent. I had a whole presentation planned for you. Let me ask you a question. If the good doctor had been in a hospital and a patient's relative says, my dad is dead or is dying, and he said, I've got to examine him to make sure, and you say, look, you idiot, you're not going to examine my dad, and he said, well, do you have a do not resuscitation order or what have you, and the patient's relative said, no, not the doctor be kind of justified to get his people up there to take this guy out of the room so he could examine him? I'm just putting almost the same sequence, only putting it on your physician. Well, number one, I know my client. I know he would react a lot differently to the situation. Well, you know what I mean. Your client is a hothead in any case, so whether you know him or not, at least the record demonstrates that. So my question is, would you think that the doctor would have a right to examine that patient and get those relatives out of the room? I would say yes. And if they didn't want to get out of the room, somebody would take them out of the room, right? But remember, Your Honor, this case is about being tased, as you mentioned.  You'd probably be here just the same. But I'm not. I'm not. I'm here because he was tased with his back against the wall in his own bedroom, with his hands up, his palms out, no aggressive movement whatsoever. Take my hypothet first, and then you can get back. Would you think he'd have a right to have his people take the relative out of the room? I would say under certain circumstances, of course. If these persons were aggressive towards him, do I think that they would have a right to tase him if there was a police officer there and there was a family who was distraught about their loved one who was in medical need? And the doctor wants to get in there to do his work that he's obligated to do. If he's being physically blocked, I would say yes, have him physically removed. One of the things you got into, Your Honor, with counsel is, why didn't he just do his job anyway? Why didn't he do his job anyway? The police officers between the subject, my client, Dr. Kent, who's against the wall, and the EMT. The EMT could have done exactly what he wanted to do, which was everything possible to revive his dead father, who has been dead for 15-some minutes. Well, the reason your physician would probably want him out is he would, even if the guy stood over in the corner, might be afraid that while he bent over, somebody might charge him or something, and I suspect that's a possibility here, too. The difference, too, would be... Based on your client's language and his activities. Right. No question my client was emotional. His father just died. He was extremely emotional. I get that. In a hospital setting, though, a patient's family doesn't have a right to be in that hospital room, if that's what you're getting at. This is his own bedroom. He has every right to be in his bedroom. Well, I absolutely do have a right to be in the loved one's room. I don't think there's any law that says you can't be there. In a hospital setting, if there was a surgery going on, I don't know. Yeah, I don't think they've got a right to be in the surgical wing. I wasn't talking about that, obviously. And if it became physical, and if this patient's family, in your hypothetical, said, you know, I am going to do harm to you, I'm going to threaten your safety, then sure, you've got to do something. Remember, in this case, why should we wait until it becomes physical? Well, remember, there wasn't an aggressive movement. Not one aggressive movement. His back is against the wall, hands up, palms out. But he hadn't left the room. He had not left the room. The police ordered him to leave the room. So he has disobeyed a command, as it were. That's true, that's true. He was told to leave the room, his own bedroom. He wanted to stand by his father's dead body. He refused to leave. He had his back against the wall, so he did comply. When they said, put your hands down, he put his hands down. And they put his hands up against the wall, palms out. Isn't it fair to say he only partially complied in the sense that he didn't leave the room? Sure. Yeah, he did not leave the room. There's no question about that. His whole family was in the room. Why can't the police tase him because he refused to leave the room? Because I would say that would not be reasonable grounds, objective, reasonable grounds to tase someone for not leaving their own bedroom. So the police can't tase people simply for failing to obey police commands. That's exactly right. What case do you rely on for that? Well, I have a whole slew of cases, actually. And they were mentioned by the district court judge when she denied their motion for summary disposition. The Grawley case, the Kajowski case, the Hagins case, the Eldridge case. Could they have physically taken him out of the room? That's a good question, and there's a lot of ifs here. What would have happened if they didn't tase him there and he made some aggressive movements? It seems to me if they want him out of the room and the EMS people want him out of the room because they're worried about their safety, too. If they want him out of the room, there's only two ways they can do it, right? Push him out, get physical with him, or tase him. If they took him by his arm and tried to remove him from the room and he became physical and physically threatened someone, then that's a different story, of course. But that didn't happen. His hands are up in the air. His back is against the wall. And it's difficult at this point, too, to get into the facts because this is such a factually intensive case. This motion was filed before any of the depths were taken. Quick acting case. It seems to me that that cuts against you a bit. I'm not sure I follow you on how it cuts against me, just how quick it was. My kind of logic, so I don't blame you for not following. I'm curious in terms of the facts. He's against the wall with his hands up. What is the police command at that point? In other words, is he arguably obeying all police commands at that point or is there another police command telling him to get out of the room then? No, there was one command to get out of the room. He said, I'm not leaving my room. I'm not leaving my father. So he's against the wall with his hands up. Am I right on that? Yes. And what causes the police officer to tase him at that point? Well, he does say, go ahead, tase me. And in his grief and bewilderment that he is being confronted with a police officer with a taser in his own bedroom under these circumstances, he said, go ahead, taser me. And he gets tasered. So that's the only statement at that point that your client makes. At that point, correct. And at that point, your client does not recall the police officer making a demand that your client leave the room at that point. Right. There was that earlier. There was clearly a demand for him to leave the room. Earlier. Earlier, right. But I'm asking at exactly the point, because you're supposed to take these cases step by step to see whether at the time that the taser is used, is it excessive force. That was it. Leave the room. The other one was calm down. Uh-huh. So both of those were before your client was against the wall with his palms up. True. And it's difficult because we have the statements, and that's what the record is before the court today, which doesn't include all the depositions, which I might add, once the depositions were taken, it became abundantly more clear of this police's conduct. So what is the evidentiary basis for the summary judgment motion? Are they affidavits as opposed to depositions? No, there's no affidavits. It's all from the police report and statements that were made. My client made a written statement, both typed and handwritten. That was in the police report itself. That's what they based their motion upon. No depositions were taken at the time. Incidentally, I did mention, and I know this is outside the record, but there was another paramedic in the room who was the paramedic or medical personnel with the most experience on the scene, and he completely disagreed with what happened. He said that man should have been left there and not messed with. He should have been left there in the window in the sunshine. That's not in the records, right? Right. None of the deps are. Let me ask this question. The questions about the facts really emphasize my biggest concern. I think you have pretty compelling facts because your client was, in fact, a doctor. Yes. And his father, in fact, had tragically passed away. Yes. Unexpectedly. Unexpectedly. And I can't imagine a more difficult or tense situation, but it could have been very different if he had been lying. He wasn't a doctor. It could have been very different if, in fact, his father was still alive, and so we understand why law enforcement and paramedics need to kind of go about their business and do their business. Couldn't it be the case that the officers here made a mistake and should not have escalated it to that point, but that would not have been clearly established at that time? You cite these district court cases. The biggest problem I have is that looking back in 20-20 hindsight, you have these compelling facts, but at the time I'm not sure as I look at the cases that I see that kind of clear guidance that we expect law enforcement to have when it comes to this constitutional line. So give me your best authority. Draw my attention to the best statement of the law at the time, in September of 2013, that this would have been a not looking back saying it was a mistake or it's unreasonable, but no, it was clearly established at the time that it was outside of constitutional act in terms of law enforcement. I would point you to the Graham case. It's been around a long time. It's a United States Supreme Court decision, and the Graham factors. I think you apply them here, but they don't quite fit in this circumstance, right? I think they do fit. They show exactly why this was not objectively reasonable. That's what it demonstrates. And again, my client's threat was I'm going to take legal action against you if you harm my dad's deceased body, if you assault my dad's body. I'm going to take legal action. That's the threat. That's not what this case is about. The case is about the tasering. Where was the threat of physical violence? There was none. There was not one threat to say I'm going to do harm to you. There was no threat to anybody's safety. There was no weapon. There was no aggressive movement. There was no touching of anybody. Suppose somebody is screaming and yelling and totally out of control but just dancing in place, no weapons or anything. Then would the police have a right to tase a person, to calm them down if they're out of control? If there was an aggressive movement towards the police officer or someone else, if there was some threat of physical harm, such as I am going to do harm to this EMT if he touches my father, there was none of that. If there was, I would say tase away. Are you familiar with the case Goodwin v. City of Painesville? I wish I could tell you. It's a recent case but it involves tasering at the same time. It came down after this happened. But it deals with a situation at the same time as your client's situation, and so it expresses what the law was that was applicable at that time. It is a relevant precedent and it is a published case. But if you're not . . . I have not read it, Your Honor. Sure. I don't know if the panel has any more questions of me. I'm happy to address them. Thank you. I think we're set. Thank you very much. Thank you. Thank you, Your Honor. Briefly, to follow up on Brother Counsel's comments, he wants to point to Graham, as pointed out in our brief. The Graham factors, clearly two of the three don't apply here because we're not dealing with a criminal or an arrest situation. The only one that does apply is whether or not the officers perceived or posed an immediate threat to the safety of the officers or others. The communicated threat here was from the ENT that he was afraid the son was going to interfere with him doing his job. The plaintiff can talk all he wants about the fact that he didn't say, I'm going to attack you, I'm going to jump on you, anything like that. The perceived threat was that this person was in danger. I draw the analogy. You're making it sound like it's a subjective test, is it? Well, it's based on the perception of the officer at the scene, based on what's known at the time. So in that sense, yes, it is because those are the facts that are relevant, are the ones that were known to the officer at the time. Or is it objective, what a reasonable officer would perceive at the time? Well, it is a reasonable officer. But my point is the only communication he had was from this EMT saying that he perceived this risk. And the circumstances in that room with the plaintiff escalating it and becoming more and more vocal and hostile and disobedient to their commands and not leaving the room, there was never a break where that tension  It's not a situation where all of a sudden he... Your opponent said, in response to my questions, that after the plaintiff was against the wall with his palms up, there were no more comments by the plaintiff except to go ahead and tase me. Is that a correct statement of that? The best of my understanding is that is correct. But we're dealing with split seconds here. This isn't something that dragged out. This is a situation where you need to leave the room, calm down, let's go downstairs. He said, I'm not leaving the room. And then he basically said, I'm going to tase you. And he puts his hand and goes, go ahead and tase me then. Suppose the plaintiff had, at this point, sat down in the corner and cowered and gotten into a fetal position.  I think it would be a much closer question. It would be either improper or a much closer question. But that's not the circumstances we have here. We have him still in the room. Same with my hypo. I'm sorry? That's the same. Right. But he's standing up. He's in a position where if he wants to interfere, he can do so. I mean, we're not dealing with a bedroom the size of this courtroom where he's 20 feet away. I mean, it's a small bedroom in a house, and he's standing by his father's bedside. Isn't kind of your best argument is that the EMS guy said to the police, help me because I'm afraid? Absolutely. That's the information he had is that this EMT, he perceived a threat. And in the Pollard case. EMS said because he was in fear of Michael Kent intervening. Exactly. That's the information that was known to the officer at the time. In the Pollard case, there was officers shot 80 rounds into a vehicle where they thought the person might have had a gun, but it ends up he didn't. The fact that he ended up not having a gun wasn't the controlling factor. It was the threat that was perceived by the officers that they perceived that they were in danger of him shooting at them that justified them shooting at the car and killing the individual. So, okay. Thank you very much. Thank you. Thank you both for your argument. The case will be submitted, and the court will take a brief recess. Thank you. Thank you.